# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF ALABAMA

IN RE:

KAREN SUE SMITH                                Case No.: 07-12361-MAM-13

        Debtor

## ORDER AND JUDGMENT DENYING IN PART FMCC'S OBJECTION TO DEBTOR'S PLAN AS PROPOSED AND ORDERING FURTHER HEARING

James E. Loris, Jr, Attorney for Debtor
Leonard N. Math, Attorney for Ford Motor Credit Company
John C. McAleer, III, Chapter 13 Trustee

       Before the Court is Ford Motor Credit Company's Objection to Confirmation. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), and the Court has authority to enter a final order. For the reasons indicated below, the Court finds that the Debtor's plan cannot be confirmed as proposed and a further hearing is needed to determine if Ford Motor Credit Company holds a purchase money security interest under section 1325(a)(*) for any of the amount financed by Debtor.

## Facts

       On or about July 5, 2006, the Debtor, Karen Sue Smith purchased a 2007 Ford Escape Truck (hereinafter the "collateral") that was financed by Ford Motor Credit Company (hereinafter "FMCC"). The lien on the collateral was properly perfected according to state law. The cash price of the collateral is listed on the sales contract as $21,182.37, minus a $2,000.00 rebate, for an unpaid balance of $19,152.37. Also included in the amount the Debtor financed was $682.48 for taxes and title fees, $330.00 for GAP insurance, $379.00 for documentary fees, $2,395.00 for

a service contract, and $8,227.52 for paying off the amount owed on the traded-in vehicle. The total amount financed to complete the transaction was $31,166.37. The collateral was acquired within 910 days of filing for bankruptcy and was for Debtor's personal use.

On August 23, 2007, the Debtor filed a chapter 13 bankruptcy case. The Debtor listed FMCC as a creditor in her petition. The Debtor's proposed plan provides that FMCC's secured debt will be crammed down to $23,772.00. FMCC filed a proof of claim, that is deemed allowed since the debtor has not objected to it, for the $27,823.12 balance owed on the loan.

On September 14, 2007, FMCC filed its objection to the confirmation of the Debtor's proposed plan based on the cramdown treatment of its secured claim. FMCC relies on the unnumbered paragraph after 11 U.S.C. § 1325(a)(9) (hereinafter "§ 1325(a)(*)" or "hanging paragraph") to support its assertion that its claim is secured for the full balance owed and cannot be bifurcated.

The following documents were produced by the parties and taken into evidence: (1) the first page of the Alabama Simple Interest Vehicle Retail Installment Contract ("sales contract"); (2) the Service Contract and/or Maintenance Plan; (3) Lyndon Property Insurance Company Declaration page; (4) Certificate of Title for collateral. From these documents, the following facts are known.

The GAP insurance was purchased simultaneously with the collateral. The GAP insurance was not purchased from Ford Motor; it was purchased from Lyndon Property. The collateral sales contract specifically states that the purchase of GAP insurance was not necessary to obtain the loan. The collateral sales contract lists the premium under "Other Optional Insurance." (Bold emphasis omitted). The collateral sales contract states that "other optional

2

insurance [is] not required to obtain credit." The declaration page of the GAP insurance coverage states that it "is Voluntary and is Not Required to obtain credit."

The service contract was purchased by the Debtor from Ford Premium. The Service Contract discloses (in capital letters) that the purchase of the service contract "is not required in order to purchase" the collateral. The Service Contract states that the Debtor is "not required to finance [the] service contract. [The Debtor] may purchase the service contract by cash or unsecured credit card." Ford Motor Credit is listed as the lienholder on the service contract.

The license, title, and registration fees, and documentary fees were paid at the same time the collateral was purchased.

The negative equity of the trade in vehicle was paid to Ford Motor Credit.

## Law

The Court is asked to decide what amount, if any, of the Debtor's loan to purchase her vehicle should be treated as a secured claim for purposes of confirming her plan. FMCC asserts the entire debt is a purchase money security interest and must be treated as such in the plan due to 11 U.S.C. § 1325(a)(*). The Debtor asserts that, at most, $23,772, the Debtor's valuation of the vehicle, is secured since much of the loan to purchase the vehicle did not give rise to a purchase money security interest.

The statutory law of Alabama does not specifically enumerate who bears the burden of proving a purchase money security interest in consumer goods transactions as it does for non-consumer goods. Ala. Code 1975 § 7-9A-103(g). Instead, it indicates that federal bankruptcy law is to be followed. *Id.* at (h). This issue before the Court was raised by FMCC's objection to Debtor's proposed plan. Therefore, FMCC bears the initial burden of proving its objection, and

3

then the ultimate burden of persuasion shifts to the Debtor to prove her plan complies with 11 U.S.C. § 1325. *In re Mitchell*, __ B.R. __, 2007 WL 3378229, n.11 (Bankr. M.D. Tenn. 2007); *In re Cross*, 376 B.R. 641, 644-45 (Bankr. S.D. Ohio 2007); *In re Matthews*, __ B.R. __, 2007 WL 4162819, *6 (Bankr. D. S.C. 2007); *In re Fletcher*, 2007 WL 1804931, *2 (Bankr. S.D. Fla. 2007).

## A.

Section 506(a) of the Bankruptcy Code is the statutory provision that allows for bifurcation of claims. Section 506(a)(1) states that an allowed claim of a secured creditor is secured to the extent of the value of the creditor's interest or the setoff amount. If the debtor is an individual in a chapter 7 or 13 and the creditor's interest is in personal property, § 506(a)(2) states that the value of such property is determined by "the replacement value of such property as of the date of the filing of the petition." Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), a debtor could bifurcate motor vehicle loans in chapter 13 plans, treating as secured only the claim amount equal to the vehicle's replacement value and treating the balance owed as unsecured. However, BAPCPA changed this treatment for certain secured claims. Congress added a paragraph to 11 U.S.C. § 1325(a). This hanging paragraph provides that a debtor cannot bifurcate the debt of a secured creditor if the debt is a purchase money security interest in a motor vehicle that was acquired within a short period before the debtor filed for bankruptcy relief. Specifically, § 1325(a)(*) states that

> [f]or purposes of paragraph (5), section 506 shall not apply to a claim...if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic] preceding the date of the filing of petition, and the collateral for that debt consists of a motor vehicle...acquired for the personal use of the debtor...or if collateral for that debt

4

consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

Section 1325(a)(5) is the Bankruptcy Code section to which the hanging paragraph refers when it states "[f]or purposes of paragraph (5)." Section 1325(a)(5) states how an allowed secured claim must be treated in a chapter 13 plan in order for the plan to be confirmed.

> Except as provided in subsection (b), the court shall confirm a plan if –
>
>       \*   \*   \*   \*   \*   \*
>
> (5) with respect to each allowed secured claim provided for by the plan–
>   (A) the holder of such claim has accepted the plan;
>   (B) (I) the plan provides that–
>       (I) the holder of such claim retain the lien securing such claim until the earlier of –
>          (aa) the payment of the underlying debt determined under nonbankruptcy law; or
>          (bb) discharge under section 1328; and
>       (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
>       (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
>     (iii) if–
>       (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
>       (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
>   (C) the debtor surrenders the property securing such claim to such holder.

Thus, the court must determine whether the debt to FMCC fits within § 1325(a)(\*) to determine whether the claim's treatment is proper for confirmation.

As other cases have stated, the hanging paragraph requires (1) a purchase money security interest securing the debt that is the subject of the claim; (2) incurrence of the debt within 910

5

days before the bankruptcy case filing; (3) the collateral for the debt is a motor vehicle; and (4) acquisition of the vehicle for the personal use of the debtor. *In re Trejos*, 374 B.R. 210, 215 (9th Cir. B.A.P. 2007); *General Motors Acceptance Corp. v. Peaslee*, 373 B.R. 252, 258 (W.D. N.Y. 2007); *In re Acaya*, 369 B.R. 564, 567 (Bankr. N.D. Cal. 2007); *In re Gonzales*, 2007 WL 3217671, *2 (Bankr. N.D. Tex. 2007). In this case, there is no dispute as to the fact that the auto was purchased within 910-days of filing or that the vehicle is for the debtor's personal use. Therefore, the issues that remain are whether the debt, or any part of it, owed to FMCC is a purchase money debt and whether it is a debt of the type that is governed by § 1325(a)(*).

## B.

The first issue is whether the debt, or any part of it, is a "purchase money security interest." The Bankruptcy Code does not define a "purchase money security interest," so the Court must examine state law to determine if FMCC in fact holds a purchase money security interest. *Peaslee*, 373 B.R. at 257; *In re Spratling*, 2007 WL 3102154, *2 (Bankr. M.D. Ga. 2007); *In re Acaya*, 369 B.R. at 567; *In re Westfall*, 365 B.R. 755, 758-60 (Bankr. N.D. Ohio 2007); *In re Price*, 363 B.R. 734, 740 (Bankr. E.D. N.C. 2007).

The State of Alabama, like most states, has adopted a version of Article 9 of the Uniform Commercial Code and its Official Comments to apply to secured transactions in the state. The Alabama Code recognizes a purchase money security interest in goods "to the extent that the goods are purchase-money collateral with respect to that security interest." Ala. Code 1975 § 7-9A-103(b)(1). "Purchase money collateral" is then defined as "goods or software that secures a purchase-money obligation *incurred with respect to that collateral*. § 7-9A-103(a)(1) (emphasis added). The Alabama Code defines a "purchase-money obligation" as "an obligation of an

6

obligor *incurred as all or part of the price* of the collateral or for value given *to enable the debtor to acquire rights* in or the use of the collateral if the value is in fact so used." § 7-9A-103(a)(2) (emphasis added). The parties do not dispute that the $19,152.37 used to pay the purchase price for the 2007 Ford Escape is a "purchase money obligation." The other items included in the sales contract are the issue.

## C.

Are GAP insurance, a service contract, documentary fees, and negative equity that are simultaneously purchased with a vehicle or paid off in the same financing transaction included as purchase money security amounts for purposes of the hanging paragraph?[1] There is a split in the case law on this issue.

Many courts have held, as Debtor asserts, that add-ons like the ones in this case would destroy the creditor's entire purchase money security interest, *see In re Blakeslee*, __ B.R. __, 2007 WL 3133937 (Bankr. M.D. Fla. 2007); *In re Honcoop,* __ B.R. __, 2007 WL 3133936 (Bankr. M.D. Fla. 2007); *In re Price*, 363 B.R. 734 (Bank. E.D. N.C. 2007); *In re Pajot*, 371 B.R. 139 (Bankr. E.D. Va. 2007)*; In re Peaslee*, 35 B.R. 545 (Bankr. W.D. N.Y. 2006), *rev'd by*, *General Motors Acceptance Corp. v. Peaslee*, 373 B.R. 252 (W.D. N.Y. 2007). However, other courts have held, as FMCC contends, that the additional expenses are included in the definition of a purchase money security interest because the financing of the expenses enables the debtor to

---

[1] An issue that will arise in some cases is whether a purchase money security interest attaches to insurance, warranties, negative equity or documentary fees as "things of value"as that term is used in § 1325(a)(*). However, for a "thing of value" to be governed by § 1325(a)(*), the security interest must have arisen within one year before the bankruptcy filing. Ms. Smith bought her car 415 days before her filing. Her debt to FMCC is outside the 365 day requisite time period.

acquire rights in or the use of the collateral as defined by state law. *See General Motors Acceptance Corp. v. Peaslee*, 373 B.R. 252 (W.D. N.Y. 2007)*; Spratling*, 2007 WL 3102154*; In re Cohrs*, 373 B.R. 107 (Bankr. E.D. Cal. 2007).

      Alabama has no case law directly on point, and there is no consensus among the courts of the Eleventh Circuit. *See Graupner v. Nuvell Credit Corp.,* 2007 WL 1858291 (M.D. Ga. June 26, 2007) (holding negative equity included in the financed amount for collateral is a purchase money security interest and could not be bifurcated); *In re Blakeslee***,** 2007 WL 3133937 (holding negative equity included in the financed amount destroyed the purchase money security interest); *In re Murray,* 352 B.R. 340 (Bankr. M.D. Ga. 2006) (holding extended service contract, documentary fee, and title fee were expenses incurred with acquiring collateral and were purchase money security interests); *In re Honcoop,* 2007 WL 3133936 (holding GAP insurance purchased with the collateral ruined the purchase money security interest).

      A recent case of Judge Keith M. Lundin, *In re Hayes*, __ B.R. __, 2007 WL 3244010 (Bankr. M.D. Tenn. 2007), contains a persuasive analysis of these issues. The Court agrees with its legal reasoning and will rule consistent with the case to the extent applicable. The *Hayes* case interprets and analyzes the application of both the hanging paragraph and the state law definition of a purchase money security interest to a fact pattern like the one in this case.

**D.**

      The creditors in *Hayes* argued that their allowed claims could not be bifurcated because they had a purchase money security interest in the vehicles they financed and under state law that security interest extended to any "purchase money obligations" incurred in obtaining the vehicles/collateral, such as insurance policies and the amounts borrowed to payoff preexisting car

8

loans. *Hayes* rejected this argument based on the facts presented and requested more proof. *Id.* at *7-12.

*In re Hayes* interpreted the state law of Tennessee. Tennessee's law is nearly the same as that of Alabama since both states have adopted Article 9 of the U.C.C. and its official comments. The U.C.C., the Alabama Code and Tennessee's law define a purchase money security interest by referencing two other concepts: (1) purchase money collateral and (2) purchase money obligation.[2] The interpretation of these two concepts is necessary to understand what a purchase money security interest is.

In deciding what is a purchase money security interest under state law, the Official Comments are helpful in interpreting the statute. The Court acknowledges that these statutory notes are not law, but they do give insight as to the application of the law. Official Comment 3 states that the "price" in the definition of a purchase money obligation "includes obligations for expenses incurred in connection with acquiring rights in the collateral, sales taxes, duties, finance charges, interest, freight charges, costs of storage in transit, demurrage, administrative charges, expenses of collection and enforcement, attorney's fees, and other similar obligations." § 7-9A-103 cmt. 3. The Comment also states that a purchase money security interest "requires a close nexus between the acquisition of collateral and the secured obligation." *Id.*

This sets up a factual analysis of each item financed with the collateral to determine if it "enabled" the debtor to purchase the collateral, if it was "incurred in connection with" obtaining the collateral, and if it has a "close nexus" to the purchase of the collateral. This is a fact specific analysis. *Hayes*, 2007 WL 3244010, at *10.

---

[2] See Part B of opinion for the language of the sections.

9

The Court concludes it must reset the matter for further hearing to determine whether FMCC can establish that any of the "add-ons" enabled the Debtor to purchase the collateral or had a close nexus to "the acquisition of the collateral and the secured obligation." If the items enabled the purchase, had a "close nexus" to the purchase, or were "obligations for expenses incurred in connection with acquiring rights in the collateral," they may be part of the purchase money security interest debt secured by the car and covered by the hanging paragraph.

<strong>E.</strong>

As stated in Part D, FMCC may or may not hold a purchase money security interest in the entire financed amount. The insurance, warranty, documentary fees and negative equity are the issue. What if the Court concludes there is a part of the debt that is a purchase money security interest and a part that is not? Should the Court apply the dual status rule and bifurcate the debt and determine part of the debt is protected by § 1325(a)(*), or should the transformation rule be applied to disallow protection for the entire debt? Should state law dictate the result?

Alabama has declared that the dual status rule applies in *non*-consumer-goods transactions, § 7-9A-103(f), but has not designated any rule to be used for consumer-goods transactions.[3] In fact, the state law leaves it up to the courts to decide. The law grants the courts the authority to "determine the proper rules" to be applied to consumer-goods transactions. § 7-9A-103(h); *see* cmt. 8. Comment 8 specifically identifies bankruptcy situations as those in which the courts have applied both the dual status rule and the transformation rule depending on the

---

[3] Some states, like Tennessee in *In re Hayes*, have a statute that guides the courts in determining the allocation of payments. *In re Hayes*, *supra*, at *12-13. Alabama, however, does not have a statute like this.

facts of the case, and equitable concerns. The official comment "leaves the court free to continue to apply established approaches to [consumer-goods transactions]." § 7-9A-103 at cmt. 8.

Given the Court's ability in this situation to adopt either the dual status or transformation rule, the Court will look to the statutory language and intent of § 1325(a)(*) to see if it provides any guidance. The hanging paragraph does not indicate it requires an all or nothing rule; it does not state that all claims of a single debt transaction must be a purchase money security interest or all are disallowed. Instead, it "requires dissection of allowed secured claims" and applies "different rules with respect to the application of § 506." *Hayes*, 2007 WL 3244010, at *13. Therefore, this Court will comply with the seeming intention of the hanging paragraph and apply the more equitable dual status rule. Applying the more equitable rule also provides some protection to both debtors and creditors. A recent case from the Middle District of Alabama, *In re Tuck*, 2007 WL 4365456 (Bankr. M.D. Ala. 2007), also held that the dual status rule should apply to Alabama secured claims in a bankruptcy context. *Tuck* also held that a secured creditor needed a contract that "contained an adequate allocation method - a first-in, first-out schedule" to preserve its secured status. *Id.* at *4.

Under the dual status rule, each monthly payment on the debt to FMCC will have been allocable to the purchase money security interest or the nonpurchase money security interest items, or allocable in part to both. The contract, when produced, may include an allocation provision. If not, the court will have to decide what the debt secured by the vehicle was at the filing of the bankruptcy case by determining an allocation method for prepetition payments, or as the *Tuck* case holds, if the contract has no allocation provision, declare the entire debt to be unsecured.

11

**F.**

There is a recent case, *In re Sanders*, 377 B.R. 836 (Bankr. W.D. Tex. 2007), that held differently than this ruling in two areas: (1) the ability of negative equity to be purchase money security debt; and (2) the applicability of state law dual status/transformation law to the issue of a creditor's qualification for protection under § 1325(a)(*). *In re Mitchell,* 2007 WL 3378299, has adopted this ruling as well.

The *Sanders* case interprets Texas law in determining the propriety of including negative equity in a purchase money security interest. Of course, the case in this Court involves Alabama law. However, both states have passed versions of Article 9 of the U.C.C. which include the same language and comments. The Court stands by its own interpretation of the requirements of the words. The Court also agrees with the *Hayes* court that whether payoff of the debt on another vehicle was necessary "to enable the debtor to acquire rights" in the new vehicle and/or whether the payoff has a "close nexus" to the purchase is a fact question. This Court can conceive of situations in which the only way a debtor can buy a car is to wrap his or her prior car's payoff in the new transaction. Some debtors would not be able to sell their old car and then obtain unsecured credit to pay off a deficiency balance which otherwise might preclude a car purchase.

*Sanders* uses the example of an auto dealer paying off a credit card debt to enable a debtor to qualify for a car loan as an argument as to why negative equity and other debts should never be wrapped into a purchase money security interest. *Sanders*, 377 B.R. at 854. These facts, if presented to a court, seem unlikely to be sufficient to meet the dealer's burden of proof. However, this Court believes each set of facts will be different and, with all due respect to the *Sanders* court, this Court is unable to make a blanket decision on the issue.

12

The *Sanders* court also held that courts do not need to determine whether any state is a dual status or transformation rule state because § 1325(a)(*) contains within itself the requirement as to whether a creditor "qualifies for the special protection afforded certain creditors under the 910-day provision of the Bankruptcy Code, a question of federal law." *Sanders*, 377 B.R. at 858. *Sanders* holds that a creditor only qualifies for § 1325(a)(*) protection if the creditor's entire debt is a purchase money security interest. Why? Because the statute states "the exception only applies *if* the creditor has a purchase money security interest securing *the debt* that is the subject of the claim." § 1325(a)(*) (emphasis added). The statute does not say the purchase money security interest can secure part of the debt; it requires the purchase money security interest to secure all of the debt.

As with so many parts of BAPCPA, judges are struggling to interpret the words used by Congress in § 1325(a)(*) as clearly as possible and in ways that harmonize with other Code sections. Again, with all due respect to the *Sanders* Court, this Court interprets § 1325(a)(*) in a different manner than *Sanders* does. The hanging paragraph, according to its own words, is to be read and used in conjunction with § 1325(a)(5). That section indicates how "allowed secured claims" are to be provided for in a plan. Since § 1325(a)(*) specifically references § 1325(a)(5), this Court reads the word "claim" in the hanging paragraph as referring to the "allowed secured claim" and "claim" in § 1325(a)(5). The "claim" in § 1325(a)(5) is the secured claim of a creditor - in this case FMCC's claim. To the extent that the "claim" is a purchase money security interest, the claim must be paid in full and cannot be crammed down regardless of the value of the collateral. To the extent of the rest of the "claim," if it is an "allowed secured claim" because there is value in the vehicle above the purchase money security debt, it too must be paid

13

according to the terms of § 1325(a)(5). If the vehicle has no value above the purchase money security interest, the "claim" is not an allowed secured claim and is not secured by a "purchase money security interest" and is therefore outside of § 1325(a)(*) and is treated as unsecured. This reading of the statute gives broader effect to the purchase money security interest protection and is consistent with the limited legislative history. *See* H.R. Rep No. 109-31 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88 (stating that one of the purposes of BAPCPA is to "ensure that the system is fair for both debtors and creditors"). The House Report to BAPCPA states that the law is to protect secured creditors by prohibiting "bifurcating a secured debt incurred within the 910-day period preceding the filing of a bankruptcy case if the debt is secured by a purchase money security interest in a motor vehicle acquired for the debtor's personal use." *Id.* at *17, 103. Of course, this reading then requires that a court determine whether it should use the dual status or the transformation rule to determine the extent of the purchase money debt, if any.

This view is compatible with the recent Seventh Circuit Court of Appeals opinion, *In re Wright*, 492 F.3d 829 (7th Cir. 2007) that interpreted the hanging paragraph in a different context. The question was whether a debtor who surrendered in a chapter 13 plan a vehicle with a claim secured by a debt protected by § 1325(a)(*) was liable for any unsecured deficiency claim if the debt was not fully secured. In holding that the debtor was liable for a deficiency debt, the Court held that a debtor and car dealer's contract and the state U.C.C. governed the parties' rights "when the Code does not supply a federal rule." *Wright*, 492 F.3d at 832. The Court stated:

> [The debtor's and creditor's lines of argument] make[]the same basic mistake . . .
> [they] suppose[] that contracts and state law are irrelevant unless specifically
> implemented by the Bankruptcy Code. *Butner* [*v. U.S.*, 440 U.S. 48 (1979)] holds
> that the presumption runs the other way: the rights under state law count in
> bankruptcy unless the Code says otherwise. Creditors don't need § 506 to create,

Case 07-12361   Doc 18   Filed 01/02/08   Entered 01/02/08 13:46:10   Desc Main
Document     Page 14 of 16

allow, or recognize security interests, which rest on contracts (and the UCC) rather than federal law. Section 502 tells bankruptcy courts to allow claims that stem from contractual debts; nothing in § 502 disfavors or curtails secured claims. Limitations, if any, depend on § 506, which the hanging paragraph makes inapplicable to purchase-money interests in personal motor vehicles granted during the 910 days preceding bankruptcy.

*Id.* at 832-33. Just as state law provides the answer in the context of surrender of a 910 claim vehicle in a plan, so too does state law provide part of the answer to how to define and treat a claim that is only partially a 910 claim. As to the nonpurchase money debt, the claim is secured or unsecured, just as it would be under state law.

### Conclusion

This Court concludes that the hanging paragraph does apply to whatever amount of the debt is a purchase money security debt. The dual status rule will apply to any remaining debt that is not a purchase money security interest claim (and is therefore not governed by § 1325(a)(*)). The secured or unsecured status of the remaining debt will be determined by use of § 506 and the value of the collateral.

At this time, FMCC has failed to prove the enabling nature or the "close nexus" of the insurance policies, service contract, title and documentary fees, and negative equity that was financed for the Debtor at the time she purchased the motor vehicle. It appears FMCC holds a purchase money security interest in the Debtor's financed vehicle under the hanging paragraph, but the Court cannot conclude whether or not the debt for any of the additional items are protected without more evidence.

15

The Debtor's plan cannot be confirmed as proposed, and a further hearing is necessary to determine if the items financed simultaneously with the collateral are considered purchase money security interests under state law.

IT IS ORDERED that a further hearing on this case is set on **January 24, 2008 at 1:00 p.m.**

Dated:    January 2, 2008

MARGARET A. MAHONEY
U.S. BANKRUPTCY JUDGE